IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL G.,[1]                                  6:20-CV-01210-BR

        Plaintiff,                          OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**BRENT WELLS**
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

**SCOTT ASPAUGH**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

        [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**DAVID BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2522

       Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Michael G. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

<u>**ADMINISTRATIVE HISTORY**</u>

      Plaintiff filed an application for DIB on February 1, 2017, and an application for SSI on March 10, 2017, alleging a disability onset date of March 28, 2016.  Tr. 200-01, 218-23.[1] The applications were denied initially and on reconsideration.

---

      [1] Citations to the official transcript of record filed by the Commissioner on November 17, 2020, are referred to as "Tr."

An Administrative Law Judge (ALJ) held a hearing on June 12, 2019.  Tr. 33-63.  At the hearing Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on August 8, 2019, in which she found Plaintiff is not entitled to benefits.  Tr. 12-32. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on May 28, 2020, when the Appeals Council denied Plaintiff's request for review.  Tr. 3-8. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on June 8, 1975.  Tr. 218.  At the time of the hearing Plaintiff was 44 years old and had a high-school education.  Tr. 262.  Plaintiff alleges disability due to "Raynaud's syndrome in hands/arms; permanent chronic low back nerve sciatica; severe pain leg; muscle deterioration [in] low back; severe arthritis; chronic pain; bulg[ing] disks in back L3, L4, L5, S1, S2"; anxiety; and post-traumatic stress disorder (PTSD).  Tr. 66.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in any substantial gainful activity after his March 28, 2016, alleged onset date. Tr. 17.

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar degenerative disc disease with lumbar

strain/sprain/contusion; left-sided sciatica; bilateral epididymitis"; insomnia; obesity; PTSD; "paranoid personality disorder NOS"; and panic attacks.  Tr. 17.  The ALJ found Plaintiff's rash, lipoma, seasonal allergies, hyperlipidemia, and hypertension are not severe impairments.  Tr. 18.  The ALJ also found Plaintiff's adjustment disorder, generalized anxiety disorder, and sacroiliac joint strain are not medically determinable impairments.  *Id.*

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 18.  The ALJ found Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can lift and carry, push and pull 10 pounds occasionally and less than 10 pounds frequently, and can stand and/or walk for approximately 2 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. [Plaintiff] cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps.  [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl.  He cannot run and should not ambulate over uneven surfaces.  He can occasionally turn his torso from side to side and all work should be performed at desk or bench level.  He cannot use vibratory tools.  The claimant can have no exposure to extreme heat and extreme cold, moving mechanical parts and high, unprotected place hazards, all as rated by the Dictionary of Occupational Titles (DOT). [Plaintiff] can understand, remember and carry out simple and routine instructions that can be learned in 30 days or less.  [Plaintiff] is limited to occasional public and co-worker contact.

Tr. 20.

At Step Four the ALJ found Plaintiff cannot perform his past relevant work.  Tr. 25.

At Step Five the ALJ found Plaintiff can perform other work that exists in significant numbers in the national economy. Tr. 26.  Accordingly, the ALJ concluded Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statement of Plaintiff's fiancee Danelle D.; (3) partially rejected the opinion of treating nurse practitioner Jarden Smith, N.P.; (4) partially rejected the opinion of examining physician Karsten Johnson, D.O.; and (5) partially rejected the opinion of examining psychiatrist Gale Smolen, M.D.

## I.   Plaintiff's Testimony

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quotation omitted).  The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (same).  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that he stopped working in March 2016 because he injured his back and was unable to continue his job.  Plaintiff stated he did not believe he would be able to do a job in which he did not have to lift more than

five or ten pounds, sit and stand at will, and put "together
small electronics or put[] small items in boxes" because he has
trouble "feel[ing] a lot of stuff with [his] hands" due to
Raynaud's syndrome.  Tr. 40-41.  Plaintiff testified Raynaud's
causes his hands to tingle "almost daily" for "a few hours" and
makes it hard to hold and to grip things.  Tr. 42-43.  Plaintiff
testified he did not believe he could do the described job
"unless they allowed [him to] . . . go to the bathroom when [he]
needed to" due to hemorrhoids.  Tr. 44.  Plaintiff noted he has
been using a cane "for well over a year" and also uses a walker
"from time to time" due to back pain and leg numbness.  Tr. 44.
Plaintiff stated he does not use the cane when he is having a
"good day," which happens approximately two days a week.  Tr. 45.
Plaintiff testified he can sit for approximately 20 minutes
before his legs "get[] tingly, like [they] are asleep" and stand
for approximately 20 minutes before his back hurts.  Tr. 47.
Plaintiff stated he lies down "close to half the day" due to back
pain.  Tr. 48.  Plaintiff is taking "muscle relaxers[,]
hydrocodone[,] and ibuprofen" for his back pain.  Tr. 52.  Those
medications do not completely relieve him of pain but they "dull
it quite a bit."  *Id*.  Plaintiff noted the medication causes him
to have an "upset stomach from time to time," but did not
identify any other side effects from the medication.  *Id*.

Plaintiff testified he has PTSD, which causes him to panic

11 - OPINION AND ORDER

in "big crowds" or "in small areas."  Tr. 50.  Plaintiff has
"acted angrily towards people when [he has] felt that way . . . a
few times.  Tr. 51.  Plaintiff noted he is not taking any
medication for his PTSD and he attended mental-health treatment
for only one month because the agency's funds were reduced and he
"would have to do group therapy, and he [will not] do group
therapy [because he] want[s] to keep [his] information private."
Tr. 50.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms," but Plaintiff's "statements concerning the
intensity, persistence and limiting effects of [his] symptoms are
not entirely consistent with the medical evidence and other
evidence in the record."  Tr. 21.  The ALJ noted CT scans and
MRIs of Plaintiff's lumbar spine from April 2016 showed mild
multilevel facet degenerative changes, but no apparent stenosis,
disc bulge, or foraminal stenosis.  Tr. 384-85, 387.  In
addition, a June 2019 MRI of Plaintiff's lumbar spine reflected
"multilevel lumbar discogenic degenerative changes at nearly all
lumbar disc space levels," "a more conspicuous central to left
papracentral disc protrusion," "increased mild bilateral neural
foraminal narrowing at L3-4," "annular bulging with a left
posterial lateral annual tear at L4-5 producing stable mild right
and moderate left-sided neural foraminal narrowing," and "stable

mild bilateral neural foraminal narrowing at L2-3." Tr. 618.
The examining radiologist noted, however, that "[t]he . . .
findings are so common in people without low back pain that while
we report their presence, they must be interpreted with caution
and in the context of the clinical situation." *Id*. The ALJ also
pointed out that treating physician Christopher Noonan, M.D.,
noted in July 2016 that Plaintiff's "MRI shows mild degenerative
changes at L5-S1 and is otherwise normal. There is nothing to
account for significant left-sided radicular symptoms. His exam
is inconsistent as [to] some of the subjective complaints in
regards to matching a . . . radicular pattern." Tr. 341.
Dr. Noonan advised Plaintiff that he did not require surgery and
that "the majority of patients who have problems like this do
well and . . . they generally improve with time." *Id*.
Similarly, treating physician Charles Pederson, M.D., noted in
April 2016 that Plaintiff's "MRI and CT scan do not identify a
cause for his radicular complaints." Tr. 365. In November 2016
treating physician Sedrick Salisbury, M.D., noted: "I'm not sure
about this case. He doesn't really have any hard findings, and
his images looked pretty darn normal. He comes in reporting
severe pain with weightbearing, basically total disability by his
description. However that doesn't seem to have been borne out by
the workup he's had." Tr. 506. The ALJ also noted examining
psychiatrist Gale Smolen, M.D., stated Plaintiff "looked to be

very organically impaired especially in the intellectual portion
of the mental status exam," but noted "I would have to conclude
that he may have been exaggerating his illness.  Even his
movements of his body seemed to be exaggerated."  Tr. 629.

The Court concludes on this record that the ALJ did not err
when she partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

## II.  Lay Witness Statement

Plaintiff asserts the ALJ erred when she partially rejected
the lay-witness statement of Plaintiff's fiancee Danelle D.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel.
Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).

On April 26, 2017, Plaintiff's fiancee Danielle D. completed

a Third Party Adult Function Report in which she noted Plaintiff
does not do any household chores or yard work, does not sleep
well, and does not go anyplace on a regular basis because he is
in pain.  Tr. 270-72.  Danielle D. stated Plaintiff can walk less
than one block and pay attention for "about an hour" because of
pain in his back and legs, anxiety, and PTSD.  Tr. 272.

The ALJ partially rejected Danelle D.'s statement.  Danelle
D.'s report is substantially similar to Plaintiff's testimony.
The Court has already concluded the ALJ did not err when she
partially rejected Plaintiff's testimony because the ALJ provided
support for her opinion based on substantial evidence in the
record.  The Court also concludes on the same basis that the ALJ
did not err when she partially rejected Danelle' D.'s report.

**III. Statement of Treating Nurse Practitioner Jarod Smith**

Plaintiff alleges the ALJ erred when she gave "little
weight" to the May 2019 statement of N.P. Jarod Smith.

Medical sources are divided into two categories:
"acceptable" and "not acceptable."  20 C.F.R. § 416.902.
Acceptable medical sources include licensed physicians and
psychologists.  20 C.F.R. § 416.902.  Medical sources classified
as "not acceptable" include, but are not limited to nurse
practitioners . . . .  SSR 06-03p, at *2.  Factors the ALJ should
consider when determining the weight to give an opinion from "not
acceptable" sources include the length of time the source has

15 - OPINION AND ORDER

known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

On May 2, 2019, N.P. Smith completed a Treating Source Statement in which he stated Plaintiff has "chronic multilevel facet disease" and arthritis.  Tr. 611.  N.P. Smith described Plaintiff's symptoms as "chronic pain, numbness in legs & feet, fatigue, and muscular weakness."  Tr. 612.  N.P. Smith relied on the 2016 CT scan and MRI of Plaintiff's lumbar spine to support his diagnosis.  N.P. Smith stated Plaintiff has to "lie down or rest" at "varying times [throughout the day] for chronic pain."  Tr. 612.  N.P. Smith noted Plaintiff's medications cause "sedation, dry mouth, dry eyes, [and] constipation."  Tr. 613.  N.P. Smith opined Plaintiff's medical problems would prevent him from working "3 or 4 days per month."  Tr. 613.

The ALJ gave N.P. Smith's opinion little weight on the grounds that he did not assess any functional limitations and did not provide any explanation for his statement that Plaintiff would miss three or four days of work per month.  The record does not reflect any acceptable medical source opinion that indicates Plaintiff would miss three or four days of work per month.  In addition, as noted, several treating medical providers found the severity of Plaintiff's complaints was unsupported by medical evidence.

On this record the Court concludes the ALJ did not err when she gave little weight to the opinion of N.P. Smith because the ALJ provided specific and legitimate reasons for doing so based on substantial evidence in the record.

**IV.  Opinions of Examining Medical Professionals**

Plaintiff alleges the ALJ erred when she partially rejected the opinions of examining physician Karsten Johnson, D.O., and examining psychiatrist Gale Smolen, M.D.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear

and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

### A.   Dr. Johnson

On November 11, 2017, Dr. Johnson completed a disability examination of Plaintiff. Dr. Johnson evaluated Plaintiff for back pain, Raynaud's, and PTSD. Dr. Johnson stated Plaintiff "appear[ed] to [have] some balance problems due to pain" and he took "slow steps and us[ed] a walker to attempt to take pressure off his spine, but he did not have any "palpable muscle spasms and his muscle tone and bulk were "normal." Tr. 475. Dr. Johnson noted Plaintiff had limited range of motion

in his spine due to pain, he was unable to squat and to rise from a squat "with ease," he was unable to "rise from a sitting position without assistance and had some difficulty getting up and down from the exam table," he was unable to walk on his heels and toes, and could not "hop on one foot bilaterally." Tr. 476. Dr. Johnson conducted a mini-mental state examination (MMSE), which was "unremarkable." Tr. 480. Dr. Johnson stated "[b]ased on [the] examination [she] anticipate[s] functional limitations with crawling, crouching, stopping, standing for longer than 10 minutes at one time, walking more than 1-2 blocks without rest, running, carrying items over 10 lbs, and going up stairs." Tr. 480. Dr. Johnson did not "anticipate [any] limitation with communication or fine motor control with the hands." *Id.*

The ALJ assigned "some weight" to Dr. Johnson's opinion. The ALJ noted Dr. Johnson's opinion was based on a one-time examination of Plaintiff, many of the limitations were based on Plaintiff's subjective complaints of pain, and "the limitations [were] stated in fairly general terms." Tr. 24. Nevertheless, in her assessment of Plaintiff's RFC the ALJ included many of the same limitations set out by Dr. Johnson. For example, the ALJ limited to lifting, carrying, pushing, and pulling ten pounds occasionally and less than ten pounds frequently; sitting for six hours in an eight-hour workday with normal breaks; occasionally balancing, stooping, kneeling,

19 - OPINION AND ORDER

crouching, crawling, and climbing stairs and ramps.  The ALJ
found Plaintiff cannot run; ambulate over uneven surfaces; or
climb ladders, ropes, or scaffolds.  The ALJ did not adopt
Dr. Johnson's ten-minute limitation on standing, but as the ALJ
noted, the record, including imaging studies and examinations by
other medical professionals did not support such a limitation.

On this record the Court concludes the ALJ did not err
when she partially rejected the Dr. Johnson's opinion because the
ALJ provided clear and convincing reasons for doing so based on
substantial evidence in the record

**B.   Dr. Smolen**

On June 13, 2019, Dr. Smolen conducted a psychiatric
evaluation of Plaintiff.  Plaintiff reported to Dr. Smolen that
he has PTSD that manifests in daily flashbacks "to prison and to
his childhood," he "often wakes up scared," he is "always on
guard," he does not like people, he hates "going out in public,"
and he has panic attacks "most of the time when he goes out in
pubic."  Tr. 627-28.  Plaintiff told Dr. Smolen that he has
suicidal thoughts "quite regularly"; usually gets six hours of
sleep, but "can go over 24 hours without sleeping; his energy
level is low; he has anger "daily"; and when he is angry he
"wants to hurt people."  Tr. 628.  Dr. Smolen conducted a mental
status examination during which Plaintiff sat "very
uncomfortably" and "frequently shifted positions."  Tr. 628.

Dr. Smolen observed "some paranoia," for example when the air
conditioner came on Plaintiff asked if Dr. Smolen was recording
him.  Tr. 629.  Plaintiff's remote memory was "considered
intact," his recent memory was for one out of three items,
Plaintiff did not know the cost of a loaf of bread, could not
spell world backwards, his "digit span" was for two numbers in
reverse order, he "could not interpret don't cry over spilt
milk," and he "got 2 of the 3 step command transposed."  Tr. 629.
Dr. Smolen noted Plaintiff's insight into his illness was "very
basically intact as was [Plaintiff's] very basic judgment."  *Id*.
Dr. Smolen concluded Plaintiff

> looked to be very organically impaired especially
> in the intellectual portion of the mental status
> exam.  I think the use of prescription pain
> medication may play a large part in that.  From
> the rest of his exam he seems paranoid but did not
> display particular memory impairment.  I would
> have to conclude that he may have been
> exaggerating his illness.  Even his movements of
> his body seemed to be exaggerated.  That is not to
> say that he does not have PTSD which he definitely
> does, or paranoid personality disorder which I
> think he also has.  I think according to the
> intellectual portion of the mental status exam, he
> is moderately impaired in his memory and
> moderately impaired in his concentration.  I do
> not feel he is able to get along with people at
> this time mentally because of his PTSD, his
> paranoid personality, and his panic attacks.

Tr. 629.

The ALJ gave "significant, but not full weight" to
Dr. Smolen's opinion.  Tr. 24.  Specifically, although the ALJ
included a limitation to occasional contact with the public and

21 - OPINION AND ORDER

coworkers in her assessment of Plaintiff's RFC, the ALJ declined to include a "limitation for supervisor contact." Tr. 24. The ALJ noted Dr. Smolen suggested Plaintiff "may have been exaggerating his illness." Tr. 629. The ALJ also stated there is not any evidence that Plaintiff "has ever had any prior issues with his supervisors and he admitted in his function report that he got along well with others." Tr. 24.

On this record the Court concludes the ALJ did not err when she partially rejected Dr. Smolen's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 11th day of May, 2022.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge


22 - OPINION AND ORDER